HINES, Director General of Railroads, v. ARRANT. (No. 2314.)

(Court of Civil Appeals of Texas. Texarkana. Nov. 17, 1920. Rehearing Denied Dec. 9, 1920.)

1. **Railroads ⪬350(19)—Failure to look second time not negligence as matter of law.**

Where an automobile driver looked for trains when 53 feet from the track, his failure to look again at a point where he would have seen an approaching train was not contributory negligence as matter of law; the test being what an ordinarily prudent person would have done under the particular circumstances.

2. **Railroads ⪬327(1)—When failure to look and listen conclusively shows negligence stated.**

Failure to look and listen at a railroad crossing may be treated as conclusively showing contributory negligence when the undisputed facts show that the failure to use such precaution was an inexcusable act of carelessness of which no person of ordinary prudence would have been guilty.

3. **Railroads ⪬350(19) — Contributory negligence of automobile driver held a question for the jury.**

Where a train was late and the jury warranted in concluding that an automobile driver thought it had passed, and there was evidence that he looked about 50 feet from the track and saw no train and that he was comparatively a new driver and most of his attention was absorbed in management of the car, the question of contributory negligence was one for the jury, though if he had again looked he would have seen an approaching train.

4. **Railroads ⪬350(33) — Subsequent negligence of engineer held question for jury.**

Where the testimony warranted the inference that a railroad engineer was looking ahead to ascertain if a crossing was clear and that there was no obstruction to prevent him from seeing an approaching automobile, it was a question for the jury whether he saw the automobile driver's peril in time to avoid the collision, though he denied that he saw the automobile until it was on the track.

5. **Appeal and error ⪬883—Defendant held estopped to complain of denial of requested issues which court offered to submit during the argument.**

Where the court refused to submit requested issues, but, after the opening argument for plaintiff and one of defendant's arguments had been made, reconsidered the ruling and offered to submit the issues, and there was nothing to indicate that defendant would not have received full value from a charge submitting them or would have been deprived of discussing any pertinent proposition of law or issue of fact, he was estopped to complain of the rejection of such issues.

6. **Trial ⪬350(7)—Refusal of requested issues on contributory negligence held not reversible error under evidence and findings of jury.**

Where, in an action for damages in a crossing collision, the jury found that plaintiff looked and listened for trains and in effect that he did all that an ordinarily prudent person would have done, and it was clearly shown that he could have seen the train had he looked a second time, the refusal to submit requested issues as to whether he could have seen the train, whether his failure to see it was negligence, and whether such negligence caused or contributed to the collision, was not reversible error.

7. **Railroads ⪬320—Duty of engineer to avoid collision arises before he is absolutely certain that driver will go into danger.**

It is the duty of a railroad engineer to use the facilities at hand to prevent a collison either by stopping or lessening the speed of the train or by giving some warning of its approach when he can reasonably infer that an approaching automobile will likely undertake to cross the track, and he has no right to wait until absolutely certain that the driver is going into a place of danger.

Appeal from District Court, Cherokee County; L. D. Guinn, Judge.

Action by T. A. Arrant against Walker D. Hines, Director General of Railroads. From a judgment for plaintiff, defendant appeals. Affirmed.

Marsh & McIlwaine, of Tyler, for appellant.

Simpson, Lasseter & Gentry, of Tyler, and Norman, Shook & Gibson, of Rusk, for appellee.

HODGES, J. This appeal is from a judgment in favor of the appellee for the sum of $15,500. Of that amount $15,000 was for personal injuries, and $500 for damages to an automobile. The injuries which formed the basis of the suit resulted from a collision between the appellant's train and an auto in

which the appellee was riding. The facts show that the appellee resided in the town of Alto, through which the Cotton Belt Railway Company operated a line running north and south. One of the principal streets, known as the "San Antonio Road," runs east and west and crosses the railway track a short distance from where the appellee resided. On the day of his injury he rode in his automobile north about two blocks to where the street he was traveling intersects San Antonio Road street at a point about 50 feet east of the railway track. He then turned west, and, just as he was crossing the track, the car in which he was riding was struck by a south-bound train consisting of a motorcar and two passenger coaches.

The negligence alleged was the failure to give the statutory signals as the train approached the crossing, the running of the train at a high rate of speed, the failure to keep a reasonable lookout for persons approaching the crossing, the failure to keep the train under control, and the failure to avoid the collision after discovering the perilous situation of the plaintiff. The appellant pleaded, among other defenses, contributory negligence, and also denied that the engineer in charge of the train actually discovered the peril of the appellee in time to avoid the collision. The principal defense relied on was contributory negligence on the part of the appellee in failing to look and listen for the approaching train. It is also contended in this appeal that the evidence is not sufficient to show that the engineer in charge of the train discovered the peril in time to prevent the injury.

The case was submitted to a jury on special issues, and the following is the substance of the material facts found by the jury: That the engineer failed to give the statutory signals in approaching the crossing; that he negligently failed to keep the train under control when approaching the crossing; that such failure was a proximate cause of the injury; that the engineer discovered the plaintiff as he was approaching the crossing and that he would not likely stop or get across the track in time to avoid being struck; that the engineer failed to use ordinary care to stop or lessen the speed of the train or to sound the whistle or ring the bell; that the speed of the train was faster than an ordinarily prudent person would have run under the same or similar circumstances; that the engineer saw the plaintiff approaching the crossing, and that he failed to sound the whistle or ring the bell to warn him of the approach of the train; that the foregoing failures of the engineer were the proximate causes of the injuries to the plaintiff. The jury further found that the plaintiff did look and listen before he went on the crossing.

[1-3] The first group of assignments complain of the refusal of the court to give a peremptory instruction to find for the defendant, and under those assignments the principal defense is discussed. The appellee testified that he had been running his car only about a month. On the day of the injury he had occasion to go from his hotel to the opposite side of the railroad, and as he left his garage he looked at his watch and found that it was 10 o'clock. The southbound train was due at 9:43, and the trains usually ran on time. It occurred to him when he looked at his watch that the train had passed.. After leaving the garage he traveled north two blocks parallel with the right of way. When he reached the San Antonio Road, which runs east and west, and just as he was entering that street, he looked up the railroad track but saw no train. The crossing into San Antonio Road was rough, and he was traveling slowly. He then turned west, and just as he was crossing the track his car was struck by the train. The first he saw of the train it was "right at him." The point where he looked for the train was 53 feet from the center of the track; at that time he could have seen a train approaching from the north 150 yards distant. He was traveling at about five miles an hour, and could have stopped his car within a few feet. This evidence makes it practically certain that, had the appellee looked after he turned west on, the San Antonio Road, he could and would have seen the approaching train. The question is: Was his failure to do so under the circumstances contributory negligence as a matter of law? If every one injured in a railroad collision who could by looking and listening discover the approach of the train before going upon the track is to be charged with contributory negligence, it would be difficult to find an instance in which that defense would not be fully established. The situations are exceedingly rare in which travelers cannot, if they will, ascertain whether or not it is safe to attempt a crossing. But the legal test is, not what the traveler could have done had he used his senses, but what an ordinarily prudent person would have done under the particular circumstances. Hence the courts have held that the failure to look and listen before going upon a railway track is not, as a matter of law, contributory negligence. Trochta et al. v. M., K. & T. Ry. Co. (Com. App.) 218 S. W. 1038; Frugia v. T. & Ft. S. Ry. Co., 36 Tex. Civ. App. 648, 82 S. W. 814; H. & T. O. Ry. Co. v. Wilson, 60 Tex. 142. However, it does not follow that the failure to look and listen may not, under some conditions, be treated as conclusively showing contributory negligence. The latter rule is applied when the undisputed facts show that the failure to use that precaution was an inexcusable act of carelessness of which no person of ordinary prudence would have been guilty. In the case before us the jury had a right to

conclude that the appellee thought this train had passed; that when he looked, at a point 50 feet from the track, and saw no train, he might reasonably infer that it was safe to cross; that he was comparatively a new driver, and most of his attention was absorbed in the management of his car. We think these facts were sufficient to pass the question of contributory negligence to the jury.

[4] But even if it should be held to the contrary, another question arises: Was the evidence sufficient to justify the jury in finding that the engineer saw the appellee's peril in time to have avoided the collision? The testimony warranted the inference that the engineer was looking ahead to ascertain if the crossing was clear, and that there was no obstruction to prevent him from seeing the appellee as he neared the crossing. While the engineer testified that he did not see the appellee's danger until the latter was on the track, there were circumstances which indicated that he did. If he was keeping a lookout as he says he was, it is difficult to understand how he could have failed to see an automobile approaching and close to the crossing in time to give a warning by blowing the whistle or ringing the bell. According to the findings of the jury, he did see the appellee, and he failed to give any warning of the train's approach. The train was at the time going downgrade, and made less noise than is usually made by a steam locomotive. The appellee might have been stopped within a few feet of the crossing had he heard the whistle or the bell. It has been decided by the Supreme Court and by this court that under circumstances similar to this the denial of the engineer that he saw a party in danger is not conclusive of that question. Brown v. Griffin, 71 Tex. 654, 9 S. W. 546; Ry. Co. v. Finn, 107 S. W. 94; T. & N. O. Ry. Co. v. House, 208 S. W. 358; Trochta v. Ry. Co., supra.

At the proper time, and before the argument had commenced, the appellant requested the submission of the following issues, which were then refused:

"(1) Could the plaintiff, before he entered on the railroad track, have seen the motorcar approaching the track or crossing?

"(2) If you answer the foregoing question, 'Yes,' then answer this question: Did the failure of plaintiff to discover whether or not a train was approaching the crossing constitute negligence on his part?

"(3) If you answer the second question, 'Yes,' then answer this question: Did such negligence on the part of plaintiff directly cause or contribute in causing the collision which resulted in his injury?

"(4) By 'negligence,' as above used, is meant the failure to do that which an ordinarily prudent person would do under similar circumstances, or the doing of that which an ordinarily prudent person would not do under similar circumstances. Bearing this definition in mind, you are instructed that if you believe

225 S.W.—49

from the evidence that plaintiff approached the crossing without looking or listening for the approach of a train, and you further believe from the evidence that by looking and listening he would have seen or heard said train in time to have prevented his injury, and you further believe that a man of ordinary prudence would, under the same or similar circumstances, have looked or listened for the approach of a train, then you are instructed to answer issue No. 2, as above set out, 'Yes,' and this would be true, even though you may believe from the evidence that there was no whistle or other signal given to announce the approach of the train and that the train was being operated in a negligent manner."

[5] The bill of exceptions which accompanies the charge shows that, after the opening argument for the plaintiff and one of the arguments for the defendant had been made, the court reconsidered that ruling at the instance of counsel for the appellee and offered to then submit the requested issues. Counsel for appellant then objected to the charge being given, and the court declined to give it. The refusal of the charge is now assigned as error. Counsel for the appellee insist that, if the charge was proper and should have been given, appellant is now estopped to complain of the failure of the court to give it. We think that conclusion correct. It is true the statute requires the instructions to the jury to be given before the argument is begun, but there appears no good reason why the court should not be permitted to correct an erroneous ruling on that subject before the argument is finally concluded and at a time when both parties still have an opportunity to discuss before the jury the questions of law and fact presented by the charge. To reverse a judgment upon the ground here urged would be giving undue weight to harmless irregularities, and thus dignify technical requirements. There is nothing in the record to indicate that the defendant could not at that stage of the proceedings have received full value of the charge had it been given to the jury, or that he would have been deprived of discussing any proposition of law or any issue of fact which became pertinent by the giving of that charge.

On the issue of contributory negligence the general charge and the answers of the jury were as follows:

"No. 11. Did the plaintiff look or listen for trains as he approached the crossing in question? Answer: Yes.

"No. 12. If you have answered special issue No. 11 in the negative, then would a person in the exercise of ordinary care have done so? You are charged that a person in approaching a railway crossing must use ordinary care to discover approaching trains. Answer: No."

[6] These answers evidence a conclusion on the part of the jury that the appellee had done all that an ordinarily prudent person

would have done under the circumstances to discover the approach of the train. It is not likely that in responding to the interrogatories propounded by the appellant they would have made substantially different answers. Moreover, it is clearly shown that the appellee could have seen the train before going on the crossing had he looked a second time. If the jury in responding to the second question of appellant had answered that his failure to discover the approach of the train was negligence on his part, that answer would have been clearly irreconcilable with their answers to special issues Nos. 11 and 12. If the jury had found him guilty of contributory negligence, there would have been no escape from the conclusion that such negligence was a proximate cause of the injury. As the record stands we do not think there was any reversible error in the failure of the court to submit the requested issues.

[7] The court also refused to give the following special charge:

"You are instructed in connection with special issue No. 5, as set out in the court's charge, that although you may believe from the evidence that the engineer saw plaintiff before he attempted to cross the track and could, by the exercise of ordinary care, have known it was his intention to cross the railway in front of the train, and could, by the exercise of ordinary care, have stopped the train in time to have avoided the collision, it would still be your duty to answer said question, 'No,' unless you further believe from the evidence that the engineer actually knew that plaintiff would attempt to cross the track in front of the train and that he would be exposed to peril in so doing, and that after he had actual knowledge of plaintiff's peril in so attempting to cross the track he failed to exercise ordinary care to use all the means within his power consistent with the safety of the train, its operatives and passengers, to stop the train or lessen its speed so as to avoid injuring plaintiff."

There was no error in that ruling. The charge requires the jury to find too much in order to reach the conclusion that the engineer should use the facilities at his hand to stop the train. He could not in the very nature of things actually know what was in the mind of the appellee as the latter was driving toward the crossing. It was his duty, if he discovered the appellee approaching the crossing and could reasonably infer that he would likely undertake to cross the track, to use the facilities at hand to prevent a collision, either by stopping or by lessening the speed of his train, or by giving some warning of the train's approach. He had no right to wait until he was absolutely certain that the traveler was going into a place of danger before taking the proper steps to avoid injuring him.

The remaining assignments of error are overruled, and the judgment is affirmed.

---

⊕⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes